DOUCET, Judge.
Defendant, Anthony J. Allison, appeals from a conviction of Driving While Intoxicated, Second Offense, six counts of Vehicular Negligent Injury, and a sentence of six months for each offense. These convictions arise out of a two-vehicular accident which occurred in Beauregard Parish on September 3, 1988, at approximately 9:30 p.m.
On that date, Allison met Mitchell Lee Davis at 8 or 9 a.m. in front of Davis’ shop in Merryville. The two men went to the store and washateria. According to Davis, they began drinking beer at about this time. Allison was driving his 1966 Ford Pickup Truck. At about 11 a.m., they drove to the home of Floyd Bullitt, where Allison showered. The three men talked a few minutes, then walked next door to the home of Bullitt’s sister, Marie Vercher. They stayed there drinking beer and mixed drinks until shortly after 9 p.m. Davis’ testimony indicates that Allison' drank steadily through the day.
Shortly after 9 p.m., Allison and Davis left in Allison’s truck to go to DeQuincy, *263 Louisiana to see friends. According to Davis, Allison was driving the truck east on La. Hwy. 110. Davis’ testimony indicates that between 5 and 30 minutes after leaving the Yercher residence, as they neared the Rice Land Lumber Co., Allison began to swerve back and forth, nearly hitting a big truck. Allison again swerved into the oncoming lane of traffic and was hit by a 1983 GMC Suburban driven by John Robin Carr. Mr. Carr, his wife, two children, and his mother-in-law, were badly hurt. Mitchell Davis was also injured. The Suburban was heavily damaged. Allison’s truck broke into pieces.
State Trooper Bruce R. Havens investigated the accident. Upon arriving on the scene, he saw the cab of the pickup in the center of the highway. The motor was in the ditch. The chassis was 40 feet away on the north side of the highway. Tools, clothes, and beer cans were scattered around the area.
By the time Officer Havens arrived on the scene of the accident, Allison and the other victims had been transported to Beauregard Memorial Hospital. Officer Havens went to the hospital and saw Allison there. Allison was on a stretcher. Nurses were attending to his injuries. Upon approaching Allison, Officer Havens smelled alcohol. Allison’s eyes were bloodshot and his speech was slurred. Officer Havens testified that Allison said he hated to go before the Judge on another DWI. Officer Havens further testified that Allison admitted that he was driving in his truck at the time of the accident. Officer Havens advised Allison of his Miranda rights. Officer Havens’ testimony indicates that Allison seemed to be alert and to understand what was being said to him. Nurse Niema Waltzer verified this and stated that defendant’s breath smelled of alcohol.
At about 10:45 p.m., Officer Havens obtained Allison’s consent to a blood alcohol test. He had with him a sealed blood test BD#4990 issued by the Department of Public Safety. At 11 p.m., Nurse Waltzer drew blood from Allison using the kit given her by Officer Havens. She gave the ampule of blood back to Officer Havens. Officer Havens sealed the blood kit. Nurse Waltzer initialed the kit which was then dated. Officer Havens took the kit to Troop D where it was turned over to Trooper Ronald Rhodes who took it to Deputy Ronald Breaux at the Calcasieu Parish Crime Lab. The blood sample was analyzed by Patrick Ieyoub, the director and forensic analyst for the Calcasieu Parish Crime Lab. He found a blood alcohol level of 0.160. La. R.S. 32:662 states that a person shall be presumed to have been under the influence of alcohol where his blood alcohol level is 0.10 percent or more by weight.
As a consequence of the accident and blood alcohol reading, the defendant was charged with six counts of Vehicular Negligent Injury in violation of La. R.S. 14:39.1 and one count of Driving While Intoxicated, Third Offense, in violation of La. R.S. 14:98. The defendant pleaded not guilty to all charges. Upon defendant’s motion all charges were consolidated and a jury trial was granted. Prior to trial, the defendant filed a motion to suppress evidence regarding statements made by the defendant shortly after the accident, and the results of the blood alcohol test. This motion was denied.
On January 16, 17, and 18, the defendant was tried by a six person jury and found guilty of all six counts of Vehicular Negligent Injury and of the lesser offense of Driving While Intoxicated, Second Offense.
On January 23, 1989, the defendant filed a Motion for Post-Verdict Judgment of Acquittal which was denied.
On March 10, 1989, the defendant was sentenced to serve the maximum of six months in the Beauregard Parish jail on each count with the sentences to run consecutively. Defendant appeals alleging six assignments of error as follows:
1.
The trial court erred in denying defendant’s motion to suppress the results of the blood alcohol test conducted on the defendant, in that at the hearing on the motion to suppress the State failed to prove its strict compliance with all applicable rules and regulations regarding the administration of blood alcohol tests.
*264 2.
The trial court erred in denying defendant’s motion to suppress the results of the blood alcohol test conducted on the defendant, in that at the hearing on the motion to suppress the State failed to prove that it had promulgated detailed procedures sufficient to insure the integrity and reliability of the chemical blood alcohol tests.
3.
The trial court erred in denying defendant’s motion to suppress statements made by the defendant following the alleged offense, in that his statements were made at a time when he was physically and mentally incapable of making a knowing and intelligent waiver of his constitutional rights and/or without first being advised of his constitutional rights as required by law.
4.
The trial court erred during the trial in denying defendant’s objection to the introduction of the blood alcohol test results on the grounds that such evidence was irrelevant.
5.
The trial court erred in denying defendant’s motion for post-verdict judgment of acquittal in that there was insufficient evidence introduced at trial to prove beyond a reasonable doubt either the offense of Driving While Intoxicated or the six counts of Vehicular Negligent Injury.
6.
The trial court erred in imposing an excessive sentence which amounts to cruel and unusual punishment, and which is not in compliance with the statutory sentencing guidelines.
ASSIGNMENTS OF ERROR NOS. 1 & 2
By his first two assignments of error, the defendant argues that the trial court erred in denying his motion to suppress the results of the blood alcohol test. Relying on State v. Rowell, 517 So.2d 799 (La.1988) the defendant first argues that these results were tainted because the State failed to prove that the regulations governing blood tests were sufficient to insure their integrity and reliability.
The Louisiana Supreme Court in State v. Rowell found that the regulations governing blood alcohol tests were insufficient for four reasons: 1) they did not specify the type of proficiency testing required of a person seeking a permit to conduct blood analysis; 2) they did not provide for the repair, maintenance, or inspection of the gas chromatograph; 3) they were not sufficient to insure the accuracy of the chemicals used to calibrate the gas chromatograph; and 4) they did not sufficiently provide for the preservation of the blood sample.
In June 1988, new regulations were promulgated in an attempt to correct the problems pointed out in the Rowell case. See 14 La.Reg. 360. These regulations now provide in detail for certification testing for applicants to perform blood analy-ses. 55 L.A.C. 1.599. These sections also provide for specific types of proficiency testing with periodic refresher courses. Provision has been made for repair, maintenance and inspection of the gas chromato-graph. 55 L.A.C. 1.557. The new regulations specify the quality of chemicals to be used for the analyses of a control blood sample in such a way as to insure the accuracy of the chemicals used to calibrate the gas chromatograph. 55 L.A.C. 1.555, and 561. Finally, the regulations make specific provision for the preservation of the blood sample prior to testing. 55 L.A.C. 1.555(G)(1). Accordingly, we find the regulations, as amended, to be sufficient to insure the integrity and reliability of blood analyses.
The defendant next argues that the blood test evidence should have been suppressed because the State failed to prove strict compliance with the regulations governing the administration of blood alcohol tests. In determining whether the denial of the defendant’s motion to suppress was correct, we are not limited to the evidence *265 heard at the hearing on the motion. We may consider all pertinent evidence adduced at the trial on the merits. State v. Fisher, 380 So.2d 1840 (La.1980). Our careful review of the entire record, especially the testimony of Patrick Ieyoub, convinces us that the regulations were strictly complied with and that the analysis of the blood sample taken from the defendant was properly conducted. Therefore, the evidence of Allison’s blood alcohol level was properly admitted into evidence.
ASSIGNMENT OF ERROR NO. 3
The defendant, in his third assignment of error, asserts that the trial court erred in allowing Officer Havens to testify that Allison admitted to driving the truck at the time of the accident. The defendant argues that his statement was not free and voluntary because at the time it was made, he was suffering from head injuries and had not been advised of his Miranda rights. Therefore, he argues this testimony should have been suppressed. However, this court need not reach the issue of whether it was error to allow this testimony. Mitchell Lee Davis, who was in the truck at the time of the accident, also testified that Allison was driving. This testimony was uncontested at trial. As a result Officer Havens’ testimony was merely cumulative. As a result, its introduction, if improper, was harmless error. “A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.” La.C.Cr.P. art 921.
ASSIGNMENT OF ERROR NOS. 4 & 5
By these assignments of error the defendant argues that the results of the blood test had no probative value. Since the blood was drawn almost two hours after the accident, he argues that its alcohol content does not prove intoxication at the time of the accident, or that he operated a vehicle while intoxicated. Therefore, he argues that his conviction should be overturned.
There is, however, sufficient evidence that the defendant operated his vehicle while intoxicated, to allow a rational trier of fact to conclude beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. See State v. Sims, 426 So.2d 148 (La.1983). Mitchell Davis testified as to the defendant’s consumption of alcohol and to his erratic driving immediately before the accident. Officer Havens testified to the presence of beer cans around the wreckage of the truck. Both Officer Havens and Nurse Waltzer testified that the defendant’s breath smelled of alcohol. Officer Havens testified that the defendant’s speech was slurred and his eyes were bloodshot. Additionally, there was testimony to indicate that while at the hospital, the defendant expressed his fear of being convicted with another DWI. It is not reasonable to believe defendant became intoxicated after the accident since he was transported directly from the scene to the emergency room by ambulance.
Therefore, the only reasonable hypothesis is that the defendant operated his vehicle while intoxicated. As a result we conclude that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Sims, supra; State v. Phillips, 389 So.2d 1260 (La.1980).
ASSIGNMENT OF ERROR NO. 6
Finally, the defendant asserts that an excessive sentence was imposed on him in that he was sentenced to serve seven consecutive six-month sentences for the seven offenses of which he was convicted. La. C.Cr.P. art. 883 provides in pertinent part that:
“If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.”
Sentences for contemporaneous crimes should be concurrent unless the offender poses an unusual risk to public safety. State v. Mosley, 466 So.2d 733 (La.App. 4th *266 Cir.), writ denied, 468 So.2d 1202 (La.1985). As the trial court noted in its reasons for sentencing, Allison clearly poses a risk to public safety. Since 1980, the defendant has had six DWI convictions. The accident made the basis of this conviction very nearly took the lives of six people.
Further, the trial judge, in giving reasons for imposing consecutive sentences under C.Cr.P. art. 883, more than adequately complied with the sentencing guidelines of C.Cr.P. art. 894.1, including noting the seriousness of defendant’s crime, the defendant’s history of DWI convictions, the defendant’s failure to respond to probationary treatment in the past, and the lack of mitigating circumstances. Considering the defendant’s history of similar offenses, and the risk of danger to the public presented by the defendant, we find no abuse of discretion in the trial court’s imposition of consecutive sentences. Nor do we find the sentences to be excessive. State v. Molinario, 400 So.2d 596 (La.1981); State v. Parker, 503 So.2d 643 (La.App. 4th Cir.1987).
Therefore, the defendant’s convictions and sentences are affirmed.
AFFIRMED.