630 So.2d 897 (1993)
STATE of Louisiana
v.
Lawrence P. RUIZ.
No. 92-KA-2092.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
*899 Linda Nuss, New Orleans, for defendant/appellant.
Harry F. Connick, Dist. Atty., Susan M. Erlanger, Asst. Dist. Atty., of Orleans Parish, New Orleans, for plaintiff/appellee.
Before BARRY and KLEES, JJ., and GULOTTA, J. Pro Tem.
JAMES C. GULOTTA, Judge Pro Tem.
On January 11, 1991 the defendant was charged by bill of information with vehicular homicide, a violation of La.R.S. 14:32.1. After a jury trial, the defendant was found guilty as charged and sentenced to serve fifteen years at hard labor and to pay a $15,000.00 fine. Subsequently, defendant was found to be a second offender. The previous sentence was vacated and defendant was resentenced to serve fifteen years as a multiple offender.

STATEMENT OF FACTS
On September 12, 1990 at about 11:00 p.m., the defendant was driving a pick-up truck westbound on Chef Menteur Highway near the intersection of Alcee Fortier when he struck the rear of an eighteen wheeler parked on the shoulder of the road. The passenger of the pick-up was killed instantaneously as a result of the collision. The defendant was taken to Methodist Hospital where he was treated for his injuries. The investigating officer, Edward Cooper, after investigating the accident scene and interrogating witnesses, saw the defendant at Methodist Hospital where he advised defendant *900 that he was under arrest for negligent homicide. Cooper then requested the assistance of a nurse to draw blood from the defendant. Alvee Carlini, R.N., with the defendant's consent, drew blood from the defendant in the presence of Officer Cooper, according to the instructions on the blood collection kit provided by the State of Louisiana. Also urine samples of the defendant were taken.[1]
Officer John Palm was qualified as an expert in blood testing. He testified that he tested the blood sample from the defendant and found it to be .27 percent blood alcohol. Officer Palm also testified that the urine sample tested positive for marijuana metabolites.[2]
Ronald Erwin, the driver of the parked 18-wheeler hit by the defendant, testified that his rig was parked on the shoulder three to four feet from the highway. He testified that he was parked sufficiently off the road such that he could and did walk between the road and his rig. Erwin further testified that after he parked, he put on his flashers and went to a nearby store. He called his dispatcher, went back to the sleeper area of his rig and waited for the local delivery man to get back to the warehouse so he could exchange loads.
An RTA bus driver and three passengers all testified that they noticed the pick-up truck prior to the accident when the truck passed the bus on the right, on the shoulder of the road, as the bus waited out a red light at Chef Menteur Highway and Bullard Avenue. These witnesses also noticed that the pick-up was speeding and zigzagging on and off the shoulder of the road.
An accident reconstruction expert, Gene Moody, testified for the defense that the road was defective because it lacked the "fog line" on the right edge of the road and because the drop off from the road to the shoulder was too deep. Moody further noted that there is a tendency to follow the vehicle in front of you. Thus, if a vehicle is parked on the shoulder, there may be the tendency to run off the side of the roadway. Finally, Moody was of the opinion that the faded "fog line" and the rig parked on the shoulder caused the defendant to drive off the shoulder and the deep and irregular drop off kept him from getting back onto the road before the collision. Moody further concluded that the defendant was not going over forty-five miles per hour and that, even if the defendant had been sober, he would not have been able to prevent the accident.
Sherri Zoller also testifying for the defense stated she was driving behind the defendant immediately prior to the accident and that the 18-wheeler did not have its flashing lights on or any warnings posted. She further testified that she did not notice the defendant's truck speeding or swerving prior to the impact. She testified that she offered to give a statement to the police, but they said they already had enough witnesses. On cross-examination, Ms. Zoller admitted that she did not notice the defendant's truck prior to impact. She further admitted that she travels that highway often going to her camp on Lake Catherine and the road conditions had never caused her to go off the side of the road.
Finally, the defense called Juan Tony Campos, the emergency medical technician who was called to the scene. Mr. Campos testified that the driver of the 18-wheeler told him that he was sleeping when the accident occurred, contradicting the driver's testimony.

ASSIGNMENTS OF ERROR
Defendant appeals his conviction and sentence assigning the following errors:
1. The trial court erred in denying defendant's motion to suppress the chemical analysis evidence;
2. The trial court erred in denying defendant's motion for new trial;
3. The trial court erred in denying defendant's special requested jury instruction;

*901 4. The trial court erred in overruling defense counsel's objection to the introduction of gruesome photographs into evidence;
5. The state failed to produce sufficient evidence to sustain the defendant's guilt as charged beyond a reasonable doubt;
6. The trial court erred in finding defendant to be a multiple offender; and
7. The trial court erred in imposing a constitutionally and statutorily excessive sentence.

ERRORS PATENT
The minute entry of July 17, 1992, the date of the original sentencing, indicates that subsequent to the sentencing, an oral motion for new trial was filed and denied.[3] The oral motion was supplemented by a written motion alleging newly discovered and intentionally withheld exculpatory evidence. The written motion was heard and denied on July 22, 1992. Had the motion been filed prior to the sentencing, the original sentencing should not have proceeded without the 24hour legal delay after denial. However, the minute entry indicates that the motion was filed after sentencing, permissible when the cause is newly discovered evidence. See C.Cr.P. articles 851, 853. The defendant was then resentenced under the multiple bill on July 31, 1992, after waiving delays and, in any event, well beyond the 24-hour legal delay required following the denial of a motion for new trial.

MOTION TO SUPPRESS
The defense first assigns error in the trial court's denial of the motion to suppress the chemical analysis evidence. The defense avers that the State failed to meet its burden of proving that it had promulgated detailed procedures which insure the integrity and reliability of the chemical test and complied with the promulgated procedures.
In State v. Rowell, 517 So.2d 799 (La.1988), the court found the regulations on blood analysis were insufficient, and thus the gas chromatography test results were inadmissible in a prosecution for operating a motor vehicle under the influence of alcohol.[4] In response to Rowell, the Department of Public Safety promulgated new rules and regulations for blood alcohol analysis.
The Third Circuit has upheld the validity of the new regulations in State v. Hebert, 559 So.2d 821, writ den., 563 So.2d 865 (La.1990); State v. Glath, 549 So.2d 897, writ den., 552 So.2d 384 (La.1989); and State v. Allison, 554 So.2d 262, (1989), writ den., 560 So.2d 21 (La.1990). However, in State v. Benoit, 570 So.2d 490 (La.App. 5th Cir.1990), the Fifth Circuit held that the new regulations did not go far enough to assure preservation of the blood sample prior to testing or contain sufficient provisions for the repair and maintenance of the machine used in testing or for accuracy of the samples used in calibrating the machine. The defense argues that the concerns expressed by the Fifth Circuit in Benoit are relevant to the instant case.
In Benoit, the court noted that the blood sample was placed in an approved Blood Alcohol Kit in the early morning hours, then placed in a squad car where it remained until later that morning. It was then placed in the trooper's locker for three days before being taken to the crime lab. The court further noted that John Ricca, Jr., the person who prepared the samples to calibrate the machine and who tested the defendant's blood sample, had been certified only the day prior to the test. Ricca testified that he could have prepared the calibration sample the first of the month, before his certification, "but probably did not because he was not certified." The court in Benoit further *902 noted that the new regulations failed to specify what maintenance may be done by the certified analyst and what must be repaired by a qualified repairman.
Unlike Benoit, the blood sample in our case was transported to the central evidence room for testing the same day. In addition, the State avers that the approved kit contains "certain preservatives which will assure the stability of the sample and not interfere with the alcohol content of the sample." The State further avers that the testing of samples with "known" quantities of alcohol both before and after the test on the subject blood sample, insure that the machine is working properly. As noted by the State, if a known sample does not provide a result within the approved range, the analyst will know that the machine is not operating properly and he may take steps to correct any problems. It is noteworthy however that neither Carlini, who drew the blood sample, nor Officer Cooper, who sealed the sample and transported it to the central evidence room, professed knowledge of the regulations propounded by the Department of Public Safety for blood samples. They did state that they followed the instructions on the State approved kit.
Officer John Palm, who did the analysis, testified that he was certified by the Department of Public Safety as a blood alcohol analyst and certified to repair the gas chromatograph. He testified that all regulations were followed and the machine was in working order when the test was conducted. He further testified that the samples used to test the machine were furnished by the manufacturer and that the tests conducted on the known samples were well within the percentage of accuracy required by the State of Louisiana.
The procedures used in the instant case are clearly distinguishable from the procedures used in Benoit. In our case, the persons responsible for the drawing, storage and testing of the blood sample complied with all regulations. We find that Benoit is distinguishable from and not applicable to the instant case.
We conclude therefore that the procedures promulgated by the Department of Public Safety in 1988 are sufficient to insure the integrity and reliability of the chemical test. In addition, the evidence supports the conclusion that the State properly complied with those procedures in this case. Accordingly, we conclude that the trial judge did not commit error in its denial of the motion to suppress the chemical analysis of the defendant's blood sample.

MOTION FOR A NEW TRIAL
Defendant claims the trial judge erred in his denial of the motion for new trial based on the State's withholding evidence favorable to the defense. According to the defendant, the victim's mother filed a civil lawsuit for the wrongful death of her son. The civil suit alleges that the victim's death was caused by the defendant and/or the driver of the 18-wheeler and/or the State of Louisiana and/or the City of New Orleans. We reject this contention.
Upon a defense request, the State is require to disclose evidence favorable to the defendant when it is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence favorable to the defendant includes both exculpatory and impeachment evidence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
The defendant avers that being named as a defendant in the civil lawsuit colored the testimony of Erwin, the driver of the 18-wheeler. The defendant further claims that, although he (the defendant) was also named as a defendant in the civil suit, he was not served prior to trial in order to hide the facts alleged in the civil suit. We find no merit to defendant's claim.
The State is not the party who filed the civil suit or decided to withhold service on the defendant. Further, the petition alleges no new facts which the defense had not already attempted to prove at trial; namely, that the accident was caused either by the *903 rig parked on the shoulder of the road or the defective condition of the road or both. This assignment has no merit.

JURY INSTRUCTIONS
The defendant argues that the trial judge erred when it refused defense counsel's request that the judge read La.R.S. 32:663 to the jury as part of the jury charge.
La.R.S. 32:663 reads as follows:
Chemical analyses of the person's blood, urine, breath or other bodily substance, to be considered valid under the provisions of this Part, shall have been performed according to methods approved by the Department of Public Safety and by an individual possessing a valid permit issued by said department for this purpose. The Department of Public Safety is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the department.
The trial judge declined to read the statute to the jury, finding that compliance with the statute was an evidentiary standard which goes to the admissibility, not the weight, of the evidence. We agree. This assignment has no merit.

GRUESOME PHOTOGRAPHS
In his fourth assignment the defendant argues that the trial court erred in overruling his objection to the introduction into evidence of gruesome photographs. Louisiana jurisprudence has long held that in order to be admissible, "gruesome" photographs must have a probative value which outweighs their prejudicial effect. State v. Comeaux, 514 So.2d 84 (La.1987); State v. Germain, 433 So.2d 110 (La.1983). The mere fact that a photograph is gruesome does not in and of itself render a photograph inadmissible. The test of admissibility is whether the probative value outweighs any prejudicial effect which may result from the display to the jury. State v. Eaton, 524 So.2d 1194 (La.1988), cert. den., Eaton v. Louisiana, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989); State v. Comeaux, supra; State v. Beach, 320 So.2d 142 (La.1975); State v. Morris, 245 La. 175, 157 So.2d 728 (1963). Generally, photographs of a victim's body which depict the fatal wounds are relevant to prove the corpus delicti, to establish the identity of the victim, the location, severity and number of wounds, and to corroborate other evidence of the manner in which the death occurred. See Comeaux, supra. The trial court's admission of an allegedly gruesome photograph will be overturned on appeal only if the prejudicial effect clearly outweighs the probative value. No error will be found unless the photographs are so gruesome so as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence. State v. Perry, 502 So.2d 543 (La.1986), cert. den., Perry v. Louisiana, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987); State v. Page, 587 So.2d 170 (La.App. 4th Cir.1991).
The State offered to introduce ten photographs of the crime scene. Defense counsel objected to the en globo introduction of the photographs. The court then reviewed the photographs and determined that three of them depicted essentially the same thing, the victim inside the pick-up truck. The court admitted all three into evidence but allowed only one photograph to be shown to the jury.
Defense counsel offered to stipulate that the victim was in the vehicle and died as a result of the injuries he received in the accident. However, counsel did not stipulate that the victim was the passenger. Thus, the photograph which depicts the victim in the passenger seat of the vehicle is probative. However, there was also testimony from various witnesses on the scene to prove that the defendant was the driver and the victim was the passenger. It is clear that the photograph was not essential. Nevertheless, the photograph is not "so gruesome so as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence." Even assuming the introduction of the photograph was error, it was harmless error as there was sufficient evidence to sustain defendant's conviction without the introduction of the photograph. Accordingly, this assignment is without merit.

*904 REASONABLE DOUBT

The defendant avers that the evidence was insufficient to prove his guilt beyond a reasonable doubt. The standard for an appellate review of the sufficiency of evidence to support a defendant's conviction was set forth in State v. Heck, 560 So.2d 611, 614-615 (La.App. 4th Cir.1990), writ den., 566 So.2d 395 (La.1990):
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987). Where the conviction is based upon circumstantial evidence, R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Langford, 483 So.2d 979 (La.1986). R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985).
R.S. 14:32.1 defines vehicular homicide as the killing of a person which is caused by a person who was operating a motor vehicle while intoxicated or under the influence of drugs. The defendant contends that the evidence is insufficient because the defense raised serious questions relative to the reliability of the chemical analysis to prove the defendant's intoxication and because an accident reconstruction expert testified that the accident was unavoidable even had the defendant been sober.
The testimony of Officer Palm that the defendant had a blood alcohol level of 0.27 percent was sufficient for a jury to find beyond a reasonable doubt that the defendant was intoxicated. As to causation, the State produced the bus driver and passengers who testified that the defendant was speeding and zigzagging on and off the road prior to the accident. Even the defendant's eyewitness admitted that she had driven the road many times without going off the road. The jury could have reasonably disregarded the conjecture of the defendant's expert that, even sober, the defendant could not have avoided the accident.
This assignment has no merit.

HABITUAL OFFENDER CONVICTION
The defendant contends that the trial court erred in finding him a multiple offender. He maintains that the colloquy of the predicate conviction failed to demonstrate that he was adequately informed of his privilege against self-incrimination.
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) the United States Supreme Court emphasized three federal constitutional rights which are waived by a guilty plea: the privilege against self-incrimination; the right to trial by jury; and the right to confront one's accusers. The purpose of the Boykin rule is to ensure that the defendant had adequate information to plead guilty intelligently and voluntarily. The Supreme Court announced its unwillingness to presume a waiver of these important rights from a silent record. Boykin was adopted by the Louisiana Supreme Court in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971) and held to apply to all pleas of guilty taken after December 8, 1971. In Parke v. Raley, ___ U.S. ___, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), the United States Supreme Court recently approved Kentucky's procedure which shifts the burden of proving the involuntariness of the prior plea to the defendant. That decision was followed by the Louisiana Supreme Court in State v. Shelton, 621 So.2d 769 (La.1993).[5]
In the instant case, the colloquy between the defendant and the trial judge at the predicate plea revealed that the defendant *905 was adequately advised of his right to remain silent. This assignment is without merit.[6]

SENTENCE
In his last assignment, the defendant avers that the trial court erred by imposing a constitutionally and statutorily excessive sentence. The imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment. State v. Cann, 471 So.2d 701 (La.1985); State v. Thomas, 447 So.2d 1053 (La.1984); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir. 1987). A sentence which appears to be severe is considered excessive and unconstitutional if it is grossly out of proportion to the severity of the crime or nothing more than the purposeless and needless imposition of pain and suffering. State v. Brogdon, 457 So.2d 616 (La.1984), cert. den., Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Telsee, 425 So.2d 1251 (La.1983).
The State submits first that the defendant is barred from asserting a claim that his sentence is excessive because he failed to comply with La.C.Cr.P. art. 881.1(D), which requires that a motion for reconsideration be filed within thirty days of sentencing. Article 881.1(A)(2) provides that "[t]he motion shall be made orally at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based." Although no written motion is found in the record, in support of his complaint on the excessiveness of his sentence, defendant introduced a copy of the petition filed in the civil suit and argued for leniency based on lack of causation, lack of intent, the defendant's remorse, and the hardship a prison sentence would have on the defendant's family. The transcript of the original sentencing contains no objection at the conclusion of the judge's remarks. However, there is an objection to the sentence noted after the sentencing on the multiple bill. Considering that an oral objection was made and that the grounds were specified by the defense at the first sentencing, we consider the defendant's claim of excessiveness of the sentence.
La.C.Cr.P. art. 894.1, as amended, focuses on the Louisiana Sentencing Guidelinesthe Louisiana Sentencing Commission's recommended sentences in felony cases. The legislation requires the trial court to consider the Commission's Guidelines, but does not require the court to follow them. Rather, amended Article 894.1 explicitly recognizes the advisory nature of the guidelines. State v. Hardy, 622 So.2d 858 (La.App. 4th Cir.1993). Although rigid conformity to the guidelines is not required, it is required that they be reviewed and used as a norm. State v. Smith, 629 So.2d 333 (La. 1993).
A review of the original sentencing transcript indicates that the trial court followed the old sentencing guidelines, despite the fact that the new guidelines took effect on January 31, 1992 and the defendant's sentencing took place on July 17, 1992. At the multiple bill sentencing the trial judge gave no reasons for the sentence, but merely resentenced the defendant to the same term as a habitual offender. There was no mention of the consideration of the guidelines and no reason given for a deviation from the *906 sentence the defendant would receive as recommended by the sentencing guidelines. The failure of the trial court to indicate consideration of these guidelines mandates that defendant's sentence be vacated and the matter remanded for resentencing in compliance with the sentencing guidelines.
Accordingly, the defendant's conviction is affirmed, his sentence vacated and the matter remanded for resentencing.
NOTES
[1] Officer Palm testified at trial as to the results and the report was entered into evidence.
[2] As per the motion to suppress evidence, the testing of the urine sample was done by Laboratory Specialists, a private laboratory. Officer Palm testified at trial as to the results and the report was entered into evidence as State's Exhibit 20. (Tr. 220)
[3] The transcript of July 17, 1992 which includes the witnesses put on by counsel and the sentencing by the court contains no mention of an oral motion for new trial. However, the motion could have been made following the judge's sentencing as stated in the minute entry.
[4] The regulations were held to be insufficient in that they did not specify the type of proficiency testing required of a person seeking a permit to conduct a blood analysis; did not provide for repair, maintenance, or inspection of the gas chromatograph; did not sufficiently provide for preservation of the blood sample; and were not sufficient to insure the accuracy of chemicals used to calibrate the gas chromatograph.
[5] By Act No. 896 the 1993 Louisiana Legislature amended R.S. 15:529.1 to place on the defendant the burden of showing that a guilty plea for a predicate offense is defective. The language of both the act and the court opinion in Shelton track the language of the Supreme Court in Parke v. Raley.
[6] In the instant case, the colloquy between the defendant and the trial judge at the predicate plea contains the following:

Mr. Ruiz, you have the right to plead not guilty to this charge of cruelty to juveniles. If you plead not guilty to the charge, then, you have certain Constitutional rights in connection with that not guilty plea. You have the right to make the District Attorney prove beyond a reasonable doubt at a trial that you are, in fact, guilty of this charge before you can be convicted and before any penalty or punishment can be imposed. You do not have to testify or produce any evidence against yourself. You are entitled to have an attorney represent you at all times during the trial, either one that you hire yourself or if you cannot afford the services of an attorney one appointed by the Court to represent you. You have the right to be tried by a jury or not as you choose and the right to see and hear the witnesses that the State produces and to cross-examine those witnesses. You have the right to produce witnesses or evidence in your behalf and in your defense if you wish to do so. You may testify on your own behalf, but you are not required to do so. Do you understand the rights that you have if you choose to plead not guilty and have a trial? (Emphasis added)