_[iARMSTRONG, Judge.
Appellant Harry Landry was originally charged with the manslaughter of Henry Watson. That charge was nolle prossed on July 29, 1992, and the appellant was that date charged with two counts of false imprisonment while armed with a dangerous weapon. In count one he was charged with false imprisonment of Yolanda Young and in count two with false imprisonment of Henry Watson. On September 15, 1992 the appellant was tried by a jury which found him not guilty as to the first count and guilty of attempted false imprisonment with a weapon as to the second count. On September 22, 1992, the trial court denied the defense incorporated motion for post-verdict judgment of acquittal and for a new trial. On October 5, 1992, the appellant was sentenced to serve five years at hard labor.

FACTS:

On December 14,1991 Yolanda Young was in a bar when she encountered Derrick Smith, a man she had dated for a few weeks. *177 Young and Smith had recently broken up and Young was seeing Henry Watson, a man whom she had dated for about ten years, the last five off and on, and with whom she had three children. Smith, who was with another female, asked Young to go outside with him but she refused. Young waited until Smith left, then she went home.
The next day, December 15, 1991, Young went to bed early in the evening. At about 7:00 p.m., the phone rang and Henry Watson, who was with her, answered it. After he got |2off the phone, he told Young he was going to Smith’s mother’s house to get things straightened out. Smith and his brother, the defendant Harry Landry, lived in their mother’s home. The mother was living at her parents’ residence, taking care of her own mother who was ill. Watson told Young to get her slippers and come with him.
Before they went to Smith’s house, they stopped at Watson’s father’s home, where Watson talked to his brothers. Next, they stopped at the gas station. Then they stopped by a friend’s house, who was working on his car and wanted Watson to see it. When Watson and Young got to Smith’s house, they circled the block once or twice before finding a parking place.
As Watson and Young exited the ear, Smith and his brother, the defendant, approached them from around the corner with guns drawn and told them to get up against the gate. Smith and the defendant then frisked the two for weapons, finding none. Smith held a .38 caliber pistol to Young’s head and the defendant held an Uzi-type semi-automatic weapon on Henry. They remained that way for a short while; then, for no apparent reason, Smith moved the gun from Young’s head and shot Watson in the face. Young fled and was shot by Smith twice in the back and once in the face.
The defense put forth several witnesses to contradict portions of the testimony of Yolanda Young. The defendant’s mother testified that she was being treated at Charity Hospital at the time Young alleged that she made the call which precipitated the incident. However, Young testified only that Watson told her it was Smith’s mother who called that night.
The defense, with the stipulation of the state, had the trial judge read an excerpt from the prior testimony of Detective Melvin Winans, who was not present. Winans testified that Young told him they went to straighten things out and to get back Young’s ring. At trial, Young denied that they went to get her ring.
Wilson Smith, the defendant’s employer, testified that he dropped the defendant off at home at around 7:00 p.m. and heard gunshots in the area shortly after he drove away. He testified that the defendant had no Uzi on .him when he was dropped off.
| gLisa Brown, the defendant’s girlfriend, testified that she saw Henry Watson’s car driving by shortly before the incident, with the windows rolled up but guns outside. She could not identify the people in the car or the types of guns.
Finally, the defendant testified that he had just gotten home from work when Watson and Young arrived. He testified that Young and Smith were arguing and Smith grabbed at Young. At that point, according to the defendant, Watson pulled a gun from under his shirt and Smith shot Watson. Defendant denied having an Uzi, denied frisking Young and Watson and denied holding them against their will.

PATENT ERROR REVIEW

A review of the record for patent errors reveals that there were none.

ASSIGNMENT OF ERROR NO. 1

The appellant avers that his sentence is excessive and that the trial court erred by its denial of his motion to reconsider the sentence.
La.C.Cr.P. art. 881.1 requires the filing of a motion to reconsider sentence which states the specific grounds on which the motion is based, the failure of which precludes raising an objection to the sentence or urging that ground on appeal or review. The State contends that, because the appellant filed only a general oral motion for reconsideration, the sentence may be considered only for unconstitutional excessive *178 ness. The appellate record does not contain a written motion for reconsideration; however, the sentencing transcript indicates that defense counsel made an oral motion. In addition, the trial court denied the motion and noted that he had “heard all the arguments relating to that motion to reconsider.” Counsel’s oral motion noted a general objection to the sentence and an objection to the “factual basis for the conclusion of the sentence.” However, immediately prior to the sentencing, counsel argued for leniency based on the appellant’s minimal criminal history and the jury’s acquittal of one count and its reduction of the charge in another count. Accordingly, these issues may be considered on appeal.
La.C.Cr.P. art. 894.1 provides:
_[jA. When the defendant has been convicted of a felony, the court shall consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission in determining the appropriate sentence to be imposed. However, no sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the court to impose a sentence in conformity with the sentencing guidelines of the commission.
B. A court may impose a sentence, which includes incarceration or other significant sanctions, which is appropriate under the sentencing guidelines notwithstanding any limitation on probation or suspension of sentence under the provisions of Article 893.
C. The court shall state for the record the considerations taken into account, including any aggravating and mitigating circumstances which may be present, and the factual basis therefor in imposing sentence.
The Louisiana Supreme Court recently interpreted art. 894.1 and the Louisiana sentencing guidelines in State v. Smith, No. 93-K-0402, 639 So.2d 237 (1994). The court specifically held that:
(1) [Wjhile a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence, La.Code Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
(Footnotes omitted).
The court went on to state:
[T]he Guidelines are advisory in nature. There is no codal or statutory requirement for record justification by the trial judge of his decision to deviate from the Guidelines and impose a sentence other than that which is suggested by the Guidelines. The only mandatory aspects of the statutory scheme are contained in La.Code Cr.P. art. 894.1, which requires the trial judge to consider the Guidelines, and to state for the record the considerations taken into account and the factual basis for the sentence imposed. The requirements of La Code Cr.P. art. 894.1 attach whether the trial judge chooses to adhere to or instead deviate from the sentence recommended by the Guidelines.
Thus, an appellate court’s role in reviewing a given sentence vis-a-vis the sentencing guidelines is limited to determining whether the trial court (1) considered the guidelines; (2) Rstated those considerations for the record; and (3) stated the factual basis for the sentence for the record. Once the appellate court makes an affirmative finding as to the above factors, it is limited to review of the sentence imposed for constitutional excessiveness, without regard to the sentencing guidelines or the sentences recommended therein.
In the instant case the record reflects that the trial court considered the sentencing guidelines. The record contains the trial court’s statement of considerations and statement of factual basis for the sentence imposed. Therefore, our review is limited to *179 examining the sentence imposed for constitutional excessiveness. State v. Smith, supra. La. Const. Art. I, Section 20 prohibits excessive punishment. Imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional rights against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Watkins, 621 So.2d 157 (La.App. 4th Cir.1993). A sentence is considered excessive and unconstitutional if it is grossly out of . proportion to the severity of the crime or nothing more than the purposeless and needless imposition of pain and suffering. State v. Brogdon, 457 So.2d 616 (La.1984), cert. den., Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Telsee, 425 So.2d 1251 (La.1983); State v. Ruiz, 630 So.2d 897 (La.App. 4th Cir.1993).
In the instant case the appellant was sentenced to serve five years at hard labor for attempted false imprisonment while armed with a dangerous weapon. False imprisonment with a dangerous weapon provides for maximum sentence of ten years with or without hard labor. La.R.S. 14:46.1. An attempt is punishable by up to one-half of that term, or a maximum of five years with or without hard labor. La.R.S. 14:27. Thus, the appellant received the maximum statutory sentence. Considering that the criminal incident in which the appellant was involved resulted in a homicide, we are unable to say that the sentence is either grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. The appellant’s sentence is not constitutionally excessive.
We find no merit to this assignment of error.
I (¡ASSIGNMENT OF ERROR NO. 2
The appellant avers that his conviction on the second count, considering his acquittal on the first count, violates the prohibition against double jeopardy and is further barred by collateral estoppel. The appellant was charged in count one with the false imprisonment of Yolanda Young. He was charged in count two with the false imprisonment of Henry Watson. He was convicted only of a reduced charge in count two. The trial testimony indicates that the appellant actually held his weapon on Henry Watson, while Derrick Smith held his weapon on Yolanda Young. Smith subsequently moved his weapon from the head of Ms. Young and shot and killed Watson. The jury could have applied the law of principals and found the appellant guilty of count one. It chose not to do so. The conviction in count two does not rely on the law of principals. Rather, the jury found the appellant guilty in that count by his own direct actions. There was no double jeopardy in the prosecution of that count or in the jury’s finding. The trial court did not err in its denial of the motion for post-verdict judgment of acquittal on that issue.
We find no merit to this assignment of error.
For the foregoing reasons, we affirm appellant’s conviction and sentence.

AFFIRMED.