WALTZER, Judge.
The defendant, a convicted felon, was charged by bill of information with possession of a firearm, a violation of R.S. 14:95.1. After being convicted of the charge, the trial court sentenced the defendant to serve six (6) years in the Department of Corrections without the benefit of probation, parole, or suspension of sentence. The mandatory fine was waived because of the defendant’s indigency.

FACTUAL BACKGROUND

On November 16, 1991, at approximately 10:45 a.m., Officers Mark Mumme and Clarence Guillard received a report of an armed robbery from a dispatcher who described the perpetrator as a black male wearing a black sweatshirt and blue jeans. The Officers proceeded to St. Claude and St. Roch, where they observed an unknown black male filling the broadcast description of the armed robber. Upon conducting a pat down search, the police retrieved a nine millimeter pistol with two live rounds from the subject’s waistband. Appellant was placed under arrest and subsequently a computer check with NOPD was conducted. They learned that Hardy was wanted and that he had a prior felony conviction.
The State and Defense stipulated that the subject of the arrest was Larry D. Hardy, who had a prior felony conviction for possession of cocaine in Case No. 335-278 “B”.

TESTIMONY AT TRIAL

The defense called as its first witness Catina Boyer. Ms. Boyer testified that on the morning of November 16, 1991, between the hours of 11:00 and 12:00, she and appellant were walking to the phone company to pay appellant’s aunt’s phone bill when a male subject jumped out of a passing car, and pulled a gun on the appellant. The appellant and the gunman struggled and the appellant was able to wrest the gun from the subject. Ms. Boyer identified the gun the State introduced into evidence *860 as the same gun that appellant had taken from the subject.
•The defense called Richard Kirton as its second witness. Mr. Kirton testified that on the morning of the incident he went to the appellant’s house at approximately 10:30 a.m. and knocked on the door of appellant’s apartment. Although there was no answer, Mr. Kirton decided to wait for the appellant. While the witness was sitting on the steps a car pulled up and the driver jumped out, pointed a gun at Mr. Kirton, and asked if he knew where the appellant was. At trial Mr. Kirton identified the gun that officers had confiscated from the appellant as the gun the unknown driver had drawn on him. Mr. Kirton testified that he did not see the appellant on the morning of the incident.

ERRORS PATENT REVIEW

A review for errors patent reveals none.

ASSIGNMENT OF ERROR NO. I

In appellant’s first assignment of error he argues that the trial court erred by ruling that statements made by the defendant to officers following his arrest would be admissible for impeachment purposes if the defendant took the stand. The appellant asserts that the State’s late disclosure of these statements acted to change his trial strategy causing him to decide not to testify at trial, and thereby prejudicing his defense. In addition, since the statements were never disclosed to him until the trial, they were not subject to a motion to suppress and were inadmissible during rebuttal testimony.
A preliminary hearing and motion to suppress was heard. The trial court found probable cause and denied the motion to suppress. The record does not indicate whether this was a motion to suppress the weapon or a motion to suppress a statement or confession. There are, however, no written motions filed in the record by the defense. Consequently, there are no answers contained in the record which the prosecution would have been obliged to file.
At the close of the State’s case the prosecutor informed the court that the appellant had made statements to the arresting officers that they intended to use in rebuttal. The prosecutor explained to the court that the officers did not think the statements relevant at the time of arrest, because they were not aware of the potential defenses that would be raised at trial. The appellant had stated to the officers that he found the weapon and that he was robbed two or three weeks prior to the incident. The trial court ruled that if the appellant testified and denied making the statements then the State would be allowed to call the officers for impeachment purposes. The defense noted its objection to the court’s ruling. Defense counsel informed the court that he had intended to call the appellant to testify, but because of the court’s ruling he would not be able to do so, hence the newly discovered information had affected his case.
Counsel argues that the court’s ruling altered his defense and contends that the credibility of defense counsel was severely undermined because he had to change strategy mid-trial as a result of the court’s ruling. However, even if defense knew about the statements in advance and the trial court ruled the statements inadmissible, the State would have been able to use the statements on rebuttal if the appellant denied making them. In United States v. Havens, 446 U.S. 620, 626, 100 S.Ct. 1912, 1917, 64 L.Ed.2d 559, 6 Fed. R.Evid.Serv. 1 (1980), the Court held:
... a defendant’s statements made in response to proper cross-examination reasonably suggested by the defendant’s direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government’s direct case, or otherwise, as substantive evidence of guilt.
The discovery rules in the Louisiana Code of Criminal Procedure, Articles 716 through 729.6, are intended to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Toomer, 395 So.2d 1320, 1329 (La.1981). A review of the record reveals that no pre-trial motions were filed by the defense. LA *861 C.Cr.P. art. 703(F) provides “Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground asserta-ble by a motion to suppress.” The officers testified that the appellant made statements; however, counsel did not file a pretrial motion, hence the trial court was correct in ruling that the State would be able to use the statements in rebuttal for impeachment purposes. The trial court did not err in its ruling; appellant’s argument is without merit.

ASSIGNMENT OF ERROR NO. II

In appellant’s second assignment of error he argues that the trial court imposed an excessive sentence.
On April 6, 1992, the trial court sentenced relator to serve six (6) years at hard labor in the Department of Corrections without benefit of probation, parole, or suspension of sentence. On that same date appellant’s trial counsel filed a motion for reconsideration of sentence which the court denied.
Appellant argues that his sentence of six (6) years in the Department of Corrections is excessive because the trial court failed to comply with the sentencing guidelines as required by La.C.Cr.P. art. 894.1. Appellant argues that the sentence of six (6) years is well above the range required in the sentencing guidelines and the court failed to articulate aggravating circumstances that would justify such a deviation.
In what may be one of the most significant developments in Louisiana criminal procedure in recent years, the Legislature by Acts 1991, No. 22, amended Louisiana Code of Criminal Procedure Article 894.1 to focus on the Louisiana Sentencing Guidelines — the Louisiana Sentencing Commission’s recommended sentences in felony cases. The legislation requires the trial court to consider the Commission’s Guidelines, but does not require the court to follow them. Rather, amended Article 894.1 explicitly recognizes the advisory nature of the guidelines. While the article continues to require the court to articulate a factual basis for the sentence, a statement for the record explaining why the sentence falls within the guideline range is sufficient. This structure logically requires that the sentencing court either impose a sentence within the Guidelines’ recommended sentence range or articulate a reason for imposing a sentence which is not within the range. Appellate review under the Guidelines is then based on established principles of excessiveness under the Louisiana Constitution. The Louisiana Sentencing Guidelines Manual, pg. 3, 1993 Edition.
On April 6, 1992, immediately following the imposition of the sentence, appellant filed a motion to reconsider sentence. Appellant cited as its reasons: (1) the sentence is excessive, violating the provisions of the United States Constitution, the Louisiana Constitution, all applicable statutes, and the Sentencing Guidelines; and (2) the Judge failed to adequately consider mitigating circumstances in fixing the jail term or fine, under both statutory and sentencing guidelines. The trial court denied appellant’s motion to reconsider sentence.
According to the appellant the sentencing range for his offense is eighteen to thirty months. Appellant’s calculations however are incorrect.
To determine the appropriate sentencing range the trial court must determine the crime seriousness level of the offense and the criminal history index for prior criminal history. The crime seriousness level is determined by the offense of conviction. La. S.G. Sec. 203(A). The seriousness level for the felony offenses are set forth by level in the Crime Seriousness Master Ranking List or Section 401(A). The seriousness level or grid level for R.S. 14:95.1 is five (5). Section 401(A).
The criminal history index classification system is a method of evaluating an offender’s criminal history in a uniform and consistent manner. Section 205. To calculate prior felony convictions and adjudications the trial court is to consider Section 402(A) which assigns points to the seriousness level of the offense of conviction. The *862 crime seriousness level for the prior felony conviction of possession of cocaine is level five (5). The number of points assigned under the criminal history index is two (2).
The next step is determining the appropriate gridcell. Section 207:
A. The Appropriate Grid Cell
1. The offense of conviction determines the appropriate seriousness level on the vertical axis of the grid.
2. The offender's criminal history index score determines the appropriate criminal history class of the horizontal axis of the grid.
3. The designated sentence range is found in the grid cell as the intersection of the row defined by the crime seriousness level and the column defined by the criminal history index.
The appellant is classified as class D in the criminal history index classification system and he is at level five (5) in the seriousness of offense. Appellant’s sentence range is therefore twenty-four (24) to thirty-six (36) months. The trial court sentenced appellant to six (6) years or seventy-two (72) months.
Section 209(D) designates when the court may deviate from the sentencing range:
The designated sentence range provided in the Grid is appropriate for a typical case; that is an offense committed without aggravating or mitigating circumstances. A departure from the designated sentence range occurs whenever the court imposes a sentence which is different from the types of sentences or outside the designated sentence range provided in the zone and cell appropriate to the case. The court should depart from the designated sentence range when sufficient aggravating or mitigating circumstances are present significantly to differentiate the case from the typical case arising under the offense of conviction.
Appellant argues that the only factor the trial court took into consideration for sentencing was the fact that appellant was in possession of a semi-automatic weapon. A review of the sentencing transcript, however, reveals that the trial court took into consideration the following aggravating circumstances: (1) appellant’s conduct threatened serious harm; (2) the appellant used a dangerous weapon in the commission of the offense; (3) the appellant did not act under provocation; and (4) appellant’s history of prior delinquency and criminal activity.
The trial court made the following observations at the sentencing hearing:
The Court, in an attempt to comply with Article 894.1 of the Code of Criminal Procedure, and the sentencing guidelines that the Court is required to consider, although advisory in nature, that have been promulgated by the legislature, the Court, having reviewed those at this time, finds that there is an undue risk that during any period of suspended sentence or probation, even if that was available, and of course it’s not in this case, that the defendant would perhaps be motivated to commit another crime, in light of his possession of this gun on the streets of this city. I do find that this gentleman is in need of some correctional treatment in a custodial environment that can be provided most effectively by his commitment to an institution. And I do find that any sentence less than the sentence that the Court is going to impose would deprecate the seriousness of the defendant’s crime. (T. pgs. 2, 3).
In State v. Smith, 610 So.2d 152 (La.App. 4th Cir.1992), writ granted, 619 So.2d 556, (La.1993), this Court explained:
... rigid conformity to the guidelines is not required. What is required, however, is that the guidelines be consulted and used as a norm. Where aggravating or extenuating circumstances are present and of record, an enhanced or reduced sentence may be imposed. However, a sentence that grossly exceeds the guidelines and is not supported by the record is unlawful.
The departure procedures under Section 209 allows the judge to use his discretion to depart in the non-typical case from the designated sentence range provided in the guidelines grid, and pronounce a *863 sentence that he considers appropriate considering all aspects of the case. Such a departure sentence is in conformity with the sentencing guidelines, though not within the designated range of the guidelines grid for a typical case, and will be upheld unless it is determined to be excessive under the Constitutions. State v. Brown, 616 So.2d 792, 794 (La.App. 2d Cir.1993).
Thus, in almost all cases, a sentence can and should be pronounced that is in conformity with the sentencing guidelines. However, when there are no aggravating or mitigating factors present in the case, and when the sentencing judge feels strongly that a sentence within the designated sentence range of the guidelines grid will not do justice in the case, he may pronounce a sentence that is not in conformity with the guidelines, giving, of course, his reasons for the sentence, including the factual basis therefore. See LSA C.Cr.P. art. 894.1(C). As previously noted, no sentence can be declared unlawful, inadequate, or excessive solely due to the failure of the judge to impose a sentence in conformity with the sentencing guidelines. Brown, at 794.
The trial court in this instance considered the sentencing guidelines. The sentencing guidelines provides the trial court with discretion in sentencing. The legislative intent was not to tie the hands of the judge when imposing a sentence. The guidelines are only a mechanism to assure fair and uniform sentences. The trial judge expressed his concern during the sentencing hearing about imposing a sentence of less than six years because of the seriousness of the crime and the background of appellant. The trial judge listed at least four aggravating circumstances that would justify the court sentencing relator outside the sentencing range. Of the four aggravating circumstances, only one is found in the list of aggravating circumstances. Section 209(B)(10). The guidelines consider the use of a dangerous weapon in the commission of the offense as an aggravating circumstance. Section 209(B)(19), however provides that the court may consider “any other relevant aggravating circumstances which distinguish the ease from the typical case of the offense of conviction.” The trial judge listed as another aggravating circumstance the fact that appellant’s conduct threatened serious harm. It is apparent that the trial judge considered the possession of a nine millimeter with two live rounds in the waistband of the appellant an aggravating circumstance. The trial judge followed the guidelines of Section 209 for departing from the sentence range.
Further, the minimum sentence appellant could have received under R.S. 14:95.1 was three (3) years and the maximum sentence appellant could have received was ten (10) years. The sentencing range under the sentencing guidelines is two (2) to three (3) years. After reviewing the sentencing guidelines and weighing relator’s prior criminal history and other factors, the trial court found that the sentence range of two (2) to three (3) years for appellant’s offense was inappropriate. The fact that the trial court sentenced appellant to three (3) years more than the maximum number of years specified in the sentencing guidelines does not automatically render appellant’s sentence unconstitutionally excessive.
This assignment of error lacks merit. Accordingly, appellant’s conviction and sentence is affirmed.
AFFIRMED.
LANDRIEU, J., concurs in part and dissents in part and assigns reasons.