| iBARRY, Judge.
Defendants were convicted of attempted illegal use of a weapon by discharging a firearm from a motor vehicle on a public .highway with the intent to injure, harm or frighten another ■ human being. La.R.S. 14:94(E). Both defendants were sentenced as second felony offenders to ten years at hard labor. Their motions to reconsider the sentence were denied. Both defendants now argue that their sentences are excessive and Celestine also contends that his motion for a new trial should have been granted.[1]
On August 27, 1992 Officers Franklin and Segue were patrolling in the area of Phoenix Arms Apartments. The officers passed the apartment complex and were turning onto Kerlerec Street when they heard gunshots. They backed up to North Robertson and saw two vehicles, one black Pontiac and one white Ford, going at a high rate of speed. The white car was following the black car. ^The officers gave chase. The black car made a left turn at the intersection of North Robertson and Kerlerec. In attempting to make a right turn onto Kerlerec, the white vehicle crashed into a parked car. The officers went to the white car and told four subjects to exit the vehicle and lie on the ground. Officer Franklin testified that he checked the car for other suspects and observed a shotgun on the front seat. The officer stated that the driver of the vehicle told him that the occupants of the black car were shooting at them.
Officer Segue yelled that the black vehicle had returned and its occupants were shooting at them. The officers took cover and returned gunfire. During the incident two subjects from the white car escaped but the officers maintained custody of defendants Celestine and May a/k/a Cutno. Additional officers were called for assistance; however, the two subjects who escaped and the black vehicle were not apprehended. After a search of the vehicle, three additional weapons were found (a total of four): a Mossberg 12 gauge short shotgun in the driver’s area; a street sweeper (a type of 12 gauge shotgun) in the front passenger area; a .25 caliber Beretta semi-automatic pistol in the left rear area; and a Haskell .45 caliber semiautomatic pistol in the left rear area.
Officer Segue corroborated Officer Franklin’s testimony as to what happened. However, she did not know the location of each weapon in the car. She could not identify the driver of the white car. Officer O’Shaughnessey testified he was called to the scene to help the two officers. He identified both defendants.
At trial Officers Franklin and Segue identified the defendants as being in the white vehicle. Officer Franklin identified Celestine as the driver |sby pointing him out, not by name. Officer Franklin did not know each defendant by name. The officers identified the white vehicle through photographs.
An investigation revealed that the subjects in the white vehicle were involved in a drive-by shooting in front of Phoenix Arms Apartments. Shirley Williams, who lives one block from the apartment complex, testified that she saw a white car speeding. Williams stated there were four people in the car and a gun was pointed out of the rear window. She did not see anyone fire the gun. The white vehicle went around the block and passed in front of the apartment complex a second time. Williams identified the vehicle at trial but could not identify its occupants.
Gwendolyn White, her daughter, Darlene White, and her sister, Dorothy Griffin, were standing in front of the apartment complex when the white vehicle approached. Gwendolyn White was holding her nephew, a four month old infant. The white vehicle passed the complex once and returned. When the vehicle passed a second time witnesses heard gunfire and saw the ear occupants shooting at the complex. The ladies attempted to run *1227 to Griffin’s apartment, but all of them were shot. Gwendolyn White was shot in the arm. Darlene White was shot in the buttocks. Dorothy Griffin was shot twice in the back. The baby was shot and at the time of trial the child’s arm was a continuing problem and two fingers were paralyzed. White, her daughter and Griffin testified that they saw the white car but did not see a black car. They were unable to identify the defendants.
Officer John Treadway testified that 11 of 15 shell casings were fired by the street sweeper, a drum fed shotgun. The other 12 gauge shells had | insufficient threads to determine which weapon fired them. There were also pellets used in shotgun buckshot. One shell casing was fired by the Haskell .45 caliber pistol. Two of the weapons found in the white car had been fired.
Defendant Celestine testified that he and defendant May were playing pool at a local lounge when they were approached by two men named “Dog” and “Mike” who asked them to take a ride. Celestine stated that he did not see a weapon before they got into the vehicle, but when he got into the back seat he saw a shotgun and a pistol. According to Celestine, May was the driver. As the four men drove past Phoenix Arms a black Pontiac began firing at them. “Dog” and “Mike” returned the gun fire. Celestine stated that after they crashed and Officer Franklin approached the vehicle, defendant May told Officer Franklin that the occupants of the black vehicle were shooting at them.
It was stipulated that if Officer Thomas O’Shaughnessy was called to testify he would state that witness Darlene White stated in a formal interview with the police that she saw a black vehicle.
MOTION FOR A NEW TRIAL (Celestine’s # 1)
Celestine argues that the trial court erred by denying his motion for a new trial. Celestine contends that Officer Franklin’s testimony was false, and when considered with admissions and discovery responses, he was prejudiced.
La.C.Cr.P. art. 851 provides:
The motion for a new trial is based upon the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations- it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is .contrary to the law and the evidence;
|5(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during trial, is available, and if the evidence had been introduced at trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
To reverse the denial of a motion for new trial, a reviewing court must find the denial was arbitrary and a palpable abuse of the trial court’s discretion. State v. Tyler, 342 So.2d 574 (La.1977), cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). Great weight is accorded to the trial court’s discretion which should not be disturbed even if reasonable persons could differ as to the propriety of the trial court’s action. State v. Talbot, 408 So.2d 861 (La.1981).
Celestine claims the State used Officer Franklin’s false testimony that he (Celestine) •was driving the white Ford. In discovery responses the State denied that Celestine made a statement. In the police report Officer Franklin noted that the driver of the white Ford told him that the other car was *1228 firing at them, but he did not identify Celes-tine as the driver.
Officer Franklin testified at the preliminary and suppression hearing that he did not recall who was the driver. At trial Officer Franklin identified Celestine as the driver. He pointed him out. The officer did not know the defendants by name. During cross-examination Officer Franklin was confronted Uwith his prior testimony. The jury heard and evaluated the testimony and chose to disregard the conflict.
Celestine contends that because the state filed a notice of intent to use the statement of the driver, the state knew all along that Officer Franklin was going to identify Celes-tine as the driver. The notice of intent was filed the morning of trial. There is nothing in the record to support the contention that the State intentionally incorrectly responded to the discovery or schemed against the defense. At the preliminary hearing when defense counsel sought to question Officer Franklin on the identity of the driver, the state objected arguing that the matter was irrelevant because the driver had not been charged. However, we in no way condone the State’s handling of pre-trial matters in this case.
Officer Franklin’s prior testimony was read to the jury. . Defense counsel’s cross-examination of Officer Franklin was thorough and highlighted the discrepancy. The jury heard Officer Segue say that she could not identify the driver of the white vehicle.
The defendant was in the car as it drove by the Phoenix Apartment Building, shots were fired and innocent people including a baby were injured. The defense has not shown how Celestine has been substantially prejudiced. The trial court did not abuse its discretion by denying Celestine’s motion for a new trial.
This assignment has no merit.

JjEXCESSTVE SENTENCE

CELESTINE’S #2

MATS # 1
Defendants Celestine and May argue that their ten year sentences at hard labor are unconstitutionally excessive. Defendant Celestine adopted May’s arguments which contend that the trial court failed to state sufficient reasons to impose the sentence.
Under the Sentencing Guidelines Grid the crime seriousness level of the defendants’ present conviction for La.R.S. 14:94 is grid level eight. §§ 401A, B and C. Celestine’s prior conviction for possession of a stolen vehicle has a criminal history index of two points, § 402A, and his recommended sentence range is 15 to 24 months. § 403A.
May’s prior convictions include possession of a stolen vehicle, simple escape, and a juvenile adjudication for attempted murder. He was on parole at the time of the present offense. The guidelines set a criminal history index of five and one-half points, §§ 402A, and his recommended sentence range is 24 to 36 months. § 403A.
The grid’s recommended sentencing ranges did not determine defendants’ sentences here. Under La.R.S. 14:94(E) the range is five to ten years at hard labor without benefit of probation or suspension of sentence. Pursuant to the attempt statute, R.S. 14:27, the maximum is one-half the longest term of imprisonment (to be served in the same manner) for the offense, or 5 years without benefit of probation or suspension of sentence. The trial court discounted the Guidelines, sentenced Celestine and May (a/ k/a Cutno) to five years (the maximum under the attempt statute) and expressly justified the sentence:
I «And I have considered the Guidelines as to both of these defendants. And the acts of these defendants cry out for the maximum. All you had to do was be in court and see the type of weapons that these two men had, what constitutes a machine gun in the form of a shotgun, shot at people wantonly on the street, shot three women and a baby, and you tell me they fall into the Sentence guidelines range from six to nine months. That’s ridiculous. The facts of this case cry out for the maximum. These men deserve the maximum. I’m considering their criminal records and considering the acts that constitute this crime, and, frankly, I think the jury was more *1229 than lenient in bringing back a verdict of attempted discharge of a weapon as opposed to as charged, which, to this Court’s mind, would have been more appropriate.
jj? sj: i{; ¡%t
That just shows you the value of those Guidelines, as far as this Court is concerned.
They have been considered, they have been rejected as being ludicrous under these circumstances....
§ 211 of the Guidelines provides:
If an offender has been convicted of an offense for which a mandatory term of imprisonment must be imposed which exceeds the maximum duration provided in the designated sentence range for that offense, the court should impose the minimum sentence required by law to be served in the manner required by law unless aggravating circumstances justify imposition of a more severe sentence.
Under La.K.S. 15:529.1 both defendants as second offenders had a mandatory minimum of one-half the longest term for the offense or 2]é years and a maximum of twice the longest term or 10 years. The trial court did not sentence according to the mandatory minimum; it imposed the maximum sentence under La. 15:529.1 on both defendants and clearly justified the sentences. At Celes-tine’s sentencing the trial court stated:
Well for the same reasons assigned at the time of the original sentence, the Court hereby sentences the defendant to serve 10 years at hard labor in the custody of the Louisiana State Department of [(¡Corrections with credit for time served and this sentence, and there are no costs, and this sentence is imposed under the provisions of 15:529.1.
% i-c # Hs & #
... I think that the sentence is really unjustly lean to the citizens of the City of New Orleans. As I said previously this young man while he may have no record to talk about thjs act was some reprehensible and so egregious as far as this Court is concerned that he is lucky to get 10 years on this as far as the Court is concerned. If I could give more I would and if the Court of Appeal sees fit to do anything with that’s their business. But as far as I’m concerned what I saw for this type of drive-by shooting at a baby and a couple of women at least, I think 10 years is remarkably lean. He is lucky the jury didn’t come in with a higher verdict as they could have done very easily....
At May’s sentencing the court declared:
I have considered the sentencing guidelines in this and I realize that I am exceeding the guideline. The defendant is sentenced under the provisions of 15:529.1 to serve 10 years at hard labor in the custody of the Louisiana State Department of Corrections with credit for time served and there are no costs.
And the reasons previously given at the original sentence are the reasons that the Court is giving this sentence which is acknowledged to be, I guess, out of the guidelines as computed by defense counsel. This is a case that cries out beyond the guidelines. This is an egregious offense and an egregious offender. This young man and his actions are the type that are helping to kill the City of New Orleans and has put fear in the hearts of every citizen for wanting, participation of drive by shooting by this individual and the consequent and subsequent shooting of three innocent women and a baby puts this individual in the class that this Court considers to be a menace to society. And frankly if I can give more than 10 years I would give more than 10 years because I think the citizens of the City of New Orleans should be safe from individuals such as Mr. Cutno/May. And he is the exact type of individual that I think that the citizens want behind bars for as long as he could I -¡(¡possibly be put there and I feel that I am carrying out the wishes of the citizens of this city by doing this ...
The Guidelines are mandatory only in that the trial court must consider them and state for the record the reasons to deviate. The trial court has- discretion to deviate where the record supports the deviation and the specified aggravating or mitigating circumstances justify the departure. State v. *1230 Smith, 629 So.2d 333 (La.1993), rehearing granted. A justified departure conforms to the Guidelines though not within the designated range and will be upheld unless it is determined to be constitutionally excessive. State v. Hardy, 622 So.2d 858 (La.App. 4th Cir.1998).
The trial court amply considered the guidelines and articulated aggravating circumstances to justify a deviation from the Guidelines. Maximum sentences are clearly justified for despicable acts such as those committed by the defendants. The sentences are not constitutionally excessive.
It is inconceivable how the jury returned a verdict of “attempted” illegal use of a weapon. The facts confirm that shots were fired at random and four innocent people were injured. A 4 month old baby will be partially paralyzed the rest of his life. The defendants do not deserve the lenient sentences afforded by the Guidelines.
We have reviewed, the record for errors patent and there are none.
The convictions and sentences of Celestine and May, a/k/a Cutno, are affirmed.

AFFIRMED.

PLOTKIN, J., dissents in part and concurs in part.

. Celestine alleged four assignments of error, but his brief argues two assignments of error: (1) denial of his motion for new trial and (2) excessive sentence. Celestine did not list as an assignment the denial of the motion for new trial, but he reserved his right to assert additional assignments upon review of the record. The assignments listed but not argued on appeal are deemed abandoned. State v. Bray, 548 So.2d 350 (La.App. 4th Cir.1989); Uniform Rules-Courts of Appeal, Rule 2-12.4.