THIGPEN, Judge,
dissenting.
The State of Alabama ex rel. J.Z. petitioned this court for a writ of mandamus directing the trial court to withdraw an order granting blood tests for the purpose of relit-igating the paternity of S.Z. It is my position that this court is required to grant the State’s petition when, as here, there is an existing order establishing paternity, and therefore, I must respectfully dissent. My position on this matter is consistent with that of our Supreme Court. Ex parte State ex rel. V.E.T.P., 646 So.2d 551 (Ala.1993); Ex parte State ex rel. G.M.F., 623 So.2d 722 (Ala.1993); Ex parte State ex rel. Milton, 598 So.2d 914 (Ala.1992); Ex parte State ex rel. Edwards, 603 So.2d 366 (Ala.1992); and Ex parte State ex rel. Harrell, 588 So.2d 868 (Ala.1991). The posture of this case improperly reserves ruling on a motion to set aside a 1981 paternity judgment until after the results of blood tests have been received. The law does not allow that. Ex parte State Department of Human Resources ex rel. Harris, 621 So.2d 1345 (Ala.Civ.App.1993), and Ex parte State ex rel. G.S., 591 So.2d 890 (Ala.Civ.App.1991).
I am mindful that
“mandamus is a drastic and extraordinary writ to be issued only where there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of *564 another adequate remedy; and (4) properly invoked jurisdiction of the court.... Furthermore, we note that it is a well-settled principle that once there has been a judicial determination of paternity, parties are precluded from disputing the paternity in subsequent proceedings.”
Harrell at 869 (citations omitted).
The law is clear that the doctrine of res judicata applies to determinations made in paternity proceedings. See Ex parte State ex rel. P.T., 596 So.2d 946 (Ala.Civ.App.1992), and State ex rel. C.B. v. L.L.Z., 594 So.2d 160 (Ala.Civ.App.1992). When the parties in a current proceeding have previously litigated a matter and have previously received a final adjudication of that matter from a court of competent jurisdiction, the doctrine of res judicata bars those parties from challenging the prior adjudication in a subsequent action. G.M.F., supra; Ex parte W.J., 622 So.2d 858 (Ala.1993).
In certain rare instances, this court has, based on a motion pursuant to Rule 60(b), A.R.Civ.P., relieved a party from the res judicata effect of a judgment adjudicating paternity; however, in such instances, extraordinary circumstances are required to justify applying this exception to the doctrine of res judicata. See, e.g., K.W. v. State ex rel. S.G., 581 So.2d 855 (Ala.Civ.App.1991); and Ex parte State ex rel. McKinney, 567 So.2d 366 (Ala.Civ.App.1990). Additionally, not only must an adjudged father present extraordinary circumstances when seeking relief pursuant to Rule 60(b) from a final judgment of paternity, but he also must request that relief within a reasonable time. G.M.F., supra; W.J., supra. In the present case, twelve years had lapsed since the paternity adjudication before J.S.T. sought to be relieved of a paternity judgment.
J.S.T. has long been familiar with this action. J.S.T. acknowledged in his pleadings that in 1980, he appeared at the initial hearing in this matter and requested blood tests, although he did not further answer or appear in the proceedings, in part, because he was incarcerated. Ultimately, a judgment by default was entered against him in January 1981 that specifically adjudicated him to be the father of the child, and it ordered him to pay support for the benefit of his child. Like the father in V.E.T.P., supra, J.S.T. did not appeal the paternity judgment, and did not file a timely motion to set aside the default judgment pursuant to Rule 55(c), A.R.Civ.P. To allow J.S.T. to obtain bloods tests for the purpose of reopening that paternity case when he was well aware of the litigation over a decade earlier, (and, in fact, participated in it initially), ignores well-established precedent regarding the accountability of a party who appears in a legal action. State v. Woodham, 276 Ala. 662,166 So.2d 391 (1964).
It is well settled that a party, even one acting pro se, is responsible for keeping track of his own case and knowing the status. Bowman v. Pat’s Auto Parts, 504 So.2d 736 (Ala.Civ.App.1987); Bowman v. Slade, 501 So.2d 1236 (Ala.Civ.App.1987). J.S.T.’s failure to follow the status of his case does not relieve him of his duty to take necessary legal steps to protect his interests. Rebel Oil Company v. Pike, 473 So.2d 529 (Ala.Civ. App.1985). Had J.S.T. responsibly followed the course of the paternity proceeding after he initially appeared in 1980, he might have been able to obtain relief pursuant to a timely post-judgment motion or appeal. Rebel, supra. The law does not permit a party, such as J.S.T., to appear and participate in legal proceedings, then later escape liability by failing “to keep up with the progress of his case.” State v. Woodham, 276 Ala. 662, 664,166 So.2d 391, 393.
In July 1993, the State of Alabama ex rel. J.Z. filed a petition for a writ of ne exeat against J.S.T., containing numerous allegations, including that J.S.T. had willfully and contemptuously avoided his obligations of paternity and support. J.S.T. answered, denying those allegations, and within his answer, he filed a motion to set aside the 1981 default judgment and a motion for blood tests. J.S.T.’s motion for blood tests stated “If the test excludes [J.S.T.] as the father, the exclusion simplifies setting aside the decree; if the test does not exclude [J.S.T.], no exclusion simplifies not setting aside the decree.” The State responded and objected to the motions, contending that the motions were barred by both time and the doctrine of res judicata.
*565 J.S.T.’s motion to set aside the 1981 default judgment was considered as a motion pursuant to Rule 60(b)(6), A.R.Civ.P. Although the trial court’s order expressed a funding “that extraordinary circumstances exist which warrant relief from the previous paternity adjudication,” it did not, expressly or impliedly, grant J.S.T.’s motion to set aside the default paternity adjudication. Instead, the trial court’s order distinctly states as follows:
“It is, therefore, ORDERED and DECREED that the State’s Petition for Writ of Ne Exeat is hereby denied, the sureties on the bond are hereby released and the parties are ORDERED to submit to blood tests at [J.S.T.j’s expense.
“This matter will remain pending until testing and discovery is completed and the case is ready for trial.”
Having disposed of the State’s petition and granted J.S.T.’s motion for blood testing, the matter which “will remain pending until testing and discovery is completed” is J.S.T.’s Rule 60(b)(6) motion to set aside the 1981 default paternity judgment.
The trial court denied the State’s attempt to have the ruling on the motion for blood tests reconsidered. By its own clear language, the trial court’s ruling on J.S.T.’s motion for blood tests was an interim order allowing discovery before the trial court considers the merits of the ease and rules on J.S.T.’s Rule 60(b)(6) motion. No final ap-pealable order existed. The lack of another adequate remedy prompted the State’s petition for a writ of mandamus before the date of the blood tests.
The trial court’s comprehensive order begins by setting out the pending matters as the State’s petition and J.S.T.’s two motions. The order distinctly states the trial court’s intention to resolve by its order the State’s petition and to resolve J.S.T.’s motion for blood tests. The express wording of the trial court’s order announces its intention to leave the remaining matter “pending until testing” is completed. To surmise that the trial court intended for its comprehensive interlocutory order to grant J.S.T.’s Rule 60(b)(6) motion is to infer an additional ruling where there is no ambiguity. I believe that the trial court’s order intends what it expressly states, and I am not convinced that the trial court granted J.S.T.’s Rule 60(b)(6) motion. Likewise, it appears from the legally inconsistent theories advanced in his brief that J.S.T. is not even convinced that the trial court has set aside the 1981 paternity judgment.
J.S.T. argues that the trial court’s detailed finding regarding extraordinary circumstances “effectively, implicitly, and practically” granted his motion to set aside the twelve-year-old paternity judgment, yet he also argues that mandamus is improper because the State had an adequate remedy by appeal. If one accepts the first portion of this argument as a true statement, J.S.T.’s legal argument is without merit. It is well settled that “an order granting a motion to set aside a default judgment and proceed to trial is interlocutory and not appealable.” Fisher v. Bush, 377 So.2d 968, 968 (Ala.1979). Accordingly, had the State appealed, as urged by J.S.T., that appeal would be dismissed. Fisher, supra; and Evans v. Sharp, 617 So.2d 1039 (Ala.Civ.App.1993).
J.S.T. also contradicts the position that the paternity judgment has been set aside by asserting that if he is not excluded by the blood tests, the right to collect an arrearage for child support remains. If the 1981 paternity and support order was “effectively” set aside as J.S.T. asserts, and J.S.T. is not excluded by the blood tests, mere logic renders the conclusion that there is no existing order upon which to collect an arrearage. J.S.T.’s position continues to be that if the blood tests do not exclude him, there is no reason to set aside the 1981 paternity adjudication. That position is untenable and legally incorrect.
Even if I could assume that the trial court intended to grant J.S.T.’s Rule 60(b)(6) motion, as apparently the majority has done, I could not agree with the rationale or result of the majority opinion. The similarities in this case and in Ex parte W.J., supra, compel a similar result. J.S.T. asserted that he appeared at the initial hearing and requested blood tests in 1980, thus demonstrating that, like the father in Ex parte W.J., supra, “even before the paternity order was entered, he had reason to doubt that he was the father.” *566 Ex parte W.J. at 862. J.S.T. failed to keep up with the status of his case, and again, like the father in Ex parte W.J., supra, he “failed to appeal the 1981 judgment” and “he failed to seek relief from that judgment pursuant to Rule 60(b)(6) within a reasonable time.” Ex parte W.J. at 362. If this court were reviewing a grant of J.S.T.’s Rule 60(b)(6) motion, my position would be governed by our Supreme Court’s holding in Ex parte W.J., supra, which, as indicated there, is supported by “other states’ opinions regarding the finality of paternity adjudications.” Ex parte W.J. at 362. Accordingly, I would hold that J.S.T.’s motion, which was filed approximately twelve years after the paternity judgment, like W.J.’s, was not filed within a reasonable time.
It has consistently been the position of our Supreme Court that a writ of mandamus is the appropriate remedy to direct a trial court to withdraw its order granting blood tests. G.M.F., supra; Milton, supra; Edwards, supra; Harrell, supra. This is particularly true in light of an existing paternity judgment that has not been set aside. V.E.T.P., supra.
The law is well settled that the adjudication of paternity is res judicata, and that J.S.T. is barred from obtaining court-ordered blood tests to reopen and readjudicate the same paternity issue that he neglected over a decade ago after he entered an appearance in the proceedings and then failed to follow the status of his case. I would grant the writ and order the Colbert County Circuit Court to withdraw its ruling on J.S.T.’s motion for blood tests which are intended to determine paternity in J.S.T.’s pending motion. Therefore, I must respectfully dissent.